**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| PGT TRUCKING, INC. | * | |
| Plaintiff | * | JUDGE: David S. Cercone |
| v. | * | NO: 2:24-cv-00248-DSC |
| USI SOUTHWEST, INC. | * | |
| Defendant | * | |

## BRIEF IN SUPPORT OF MOTION TO DISMISS

Defendant, USI Southwest, Inc. ("USI"), by and through its undersigned counsel, submits this Brief in Support of its Motion to Dismiss.

## I.     INTRODUCTION

Plaintiff, PGT Trucking, Inc. ("PGT") filed a Complaint seeking damages for the costs it incurred in defending two lawsuits, as well as other damages related to the two lawsuits, where its insurance carrier disclaimed coverage. PGT files the present action not against its insurance carrier, but rather its insurance broker on grounds that that USI failed to procure an insurance policy that covered PGT's brokerage operations. However, Plaintiff's Complaint suffers from two significant defects. First, a review of the insurance policy at issue undoubtedly demonstrates that USI did procure an insurance policy that provides insurance for PGT's brokerage operations. As USI procured such a policy, all of PGT's claims fail regardless of whether they sound in tort, statute, or contract. Second, PGT purports to assert a claim under the Pennsylvania Unfair Trade Practices and Consumer Protection Law. However, PGT purchased the policy at issue to cover its commercial interests and therefore PGT is not in the class of persons who can prosecute a claim pursuant to the Pennsylvania Unfair Trade Practices and Consumer Protection Law.

1

## II. PROCEDURAL HISTORY AND STATEMENT OF FACTS

### A. Procedural Posture

PGT initiated this matter by filing a Complaint in the Beaver County Court of Common Pleas. Service was effectuated on USI on or about February 7, 2024. [Doc. 1, ¶3] Thereafter, USI timely filed a Notice of Removal in the United States District Court for the Western District of Pennsylvania on February 28, 2024. [Doc. 1] The Complaint asserts causes of action for: (1) Breach of Contract; (2) Common Law Negligence; and (3) a Violation of the Unfair Trade Practices and Consumer Protection Law.

### B. Factual Background

The Complaint alleges, that Plaintiff is engaged in trucking and brokerage operations and "requested and Defendant undertook the obligation to procure insurance coverage for Plaintiff's brokerage operation." [Doc. 1-1, ¶5] The Complaint further alleges that, "Defendant procured, and Plaintiff purchased, TBL1643-B02 from Evanston Insurance Company ("Evanston") which had a policy period of June 30, 2020 to June 30, 2021."[1] [Doc. 1-1, ¶6] The Policy contains a coverage form titled "Transportation Broker Liability and Contingent Auto Coverage Form." (Ex. "A," pp. 22-29) Of particular note, the "Transportation Broker Liability and Contingent Auto Coverage Form" contains exclusion numbers 12 and 13 which provide exclusions from coverage for:

**12. Motor Carrier Operations**

"Bodily injury" or "property damage" arising directly or indirectly out of an "accident" when the insured, a spouse or family member of the insured, an "employee" of the insured, or any entity in which the insured has partial or full

---

[1] A true and correct copy of Evanston Insurance Company Policy Number TBL1643-B02 (hereinafter the "Policy") is attached hereto as Exhibit "A." The Court may consider this document which is "integral to [and] explicitly relied upon in the complaint" in considering the present motion without converting it into a motion for summary judgment. Rasheed v. DiSalvo, No. 2:22-CV-01871, 2023 WL 6609572, at *3 (W.D. Pa. Sept. 6, 2023), report and recommendation adopted, No. 22CV1871, 2023 WL 6598688 (W.D. Pa. Oct. 10, 2023).

ownership, is acting as the "motor carrier" **or is listed on the bill of lading** or contract of carriage.

**13. Other Operations**

Any operations by or on behalf of the insured other than operations as a "transportation broker".

(Ex. "A," p. 24, emphasis added.)

The Complaint further alleges, "On June 1, 2021, Lora Schumer and Nina Marshall were involved in a motor vehicle accident in Cape Girardeau, Missouri." [Doc. 1-1, ¶7] Thereafter, "Ms. Schumer and Ms. Marshall both brought causes of action ("the Lawsuits") against Plaintiff, along with other defendants, for alleged injuries arising out of the subject incident. The Lawsuits were filed in the 32nd Judicial Circuit, Cape Girardeau County, Missouri with Ms. Schumer's lawsuit assigned number 22CG-CC00195 and Ms. Marshall's lawsuit assigned number 22CG-00245." [Doc. 1-1, ¶8] Subsequent thereto, Evanston denied coverage on the basis that it did not have a duty to defend nor indemnify Plaintiff on grounds that Plaintiff was "acting as a motor carrier or when PGT is listed on the bill of lading or contract of carriage." [Doc. 1-1, ¶9] Per exclusion 12, the Policy does not provide coverage when PGT is listed on the bill of lading. (Ex. "A," p. 24) PGT was, in fact, listed on the bill of lading. (A true and correct copy of the Bill of Lading is attached hereto as Exhibit "B")[2]

## III.   STATEMENT OF QUESTIONS INVOLVED

**(A)   Whether the Complaint fails to state a claim for breach of contract or negligence where Plaintiff received insurance for its brokerage operations.**

Suggested Answer:   **Yes.**

---

[2] Similar to the policy, the bill of lading is integral to the Complaint as it is the predicate for Evanston's denial of coverage as set forth in Paragraph 9.

**(B)** **Whether the Complaint fails to state a claim for a violation of the Unfair Trade Practices and Consumer Protection Law.**

<u>Suggested Answer</u>: **Yes.**

## IV. <u>STANDARD OF REVIEW</u>

In order to survive a motion to dismiss under Rule 12(b)(6), the complaint must state a claim that is "plausible on its face" supported by more factual averments than a simple "the-defendant-unlawfully-harmed-me accusation." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (internal citations omitted). Courts "disregard rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements." <u>James v. City of Wilkes-Barre</u>, 700 F.3d 675, 679 (3d Cir. 2012). Moreover, "although the Court is generally required to accept the Complaint's factual allegations as true, this requirement does not apply where those allegations are contradicted by the exhibits relied upon by the parties." <u>James v. Brant</u>, No. 3:22-CV-106, 2024 WL 23380, at *11 (W.D. Pa. Jan. 2, 2024)(internal citations omitted). Evaluated in this manner, "[p]leadings that establish only a mere possibility of misconduct do not show entitlement to relief." <u>Sweda v. Univ. of Pa.</u>, 923 F.3d 320, 328 (3d Cir. 2019) (citing <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 211 (3d Cir. 2009)). Therefore, Courts in this Circuit will grant motions to dismiss brought pursuant to Rule 12(b)(6) if factual allegations are not sufficient "to raise a right to relief above the speculative level." <u>W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank</u>, 712 F.3d 165, 169 (3d Cir. 2013) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).

## V. ARGUMENT

### (A) The Complaint fails to state a claim where Plaintiff received insurance for its brokerage operations.

PGT's claims fail as a matter of law because PGT received the type of insurance it sought from USI and therefore USI fulfilled its legal obligations whether founded in tort, statute, or contract.  In the matter at hand, the Complaint and the documents upon which it relies demonstrate that USI procured an insurance policy for Plaintiff's brokerage operations as requested by Plaintiff.

Pennsylvania law is clear that "an insurance broker owes a duty of care to its customer . . . 'to exercise the care that a reasonably prudent businessman in the brokerage field would exercise under similar circumstances.'" Indus. Valley Bank & Tr. Co. v. Dilks Agency, 751 F.2d 637, 640 (3d Cir. 1985) (internal quotations omitted).  Another formulation of this principle is that "a plaintiff acquires a cause of action . . . where the broker neglects to procure insurance, or does not follow instructions, or if the policy is void or materially defective through the agent's fault." Berenato v. Seneca Specialty Ins. Co., 240 F. Supp. 3d 351, 362 (E.D. Pa. 2017) (internal quotations omitted).  However, "[i]n the context of an insurance transaction, the insured is presumed to know what type of coverage he/it needs or wants, and an insurance broker is not under an affirmative duty to inspect a property and recommend insurance to a client [] or to advise a client regarding the extent of coverage." Allegrino v. Conway E & S, Inc., No. CIV.A. 09-1507, 2010 WL 3943939, at *8 (W.D. Pa. Oct. 6, 2010)(internal citations omitted).  Thus, PGT had the "'obligation to question the insurer at the time the insurance contract is entered into as to the type of coverage desired and the ramifications arising therefrom,' and to determine what coverage will best serve [its] needs." Berardi v. USAA Gen. Indem. Co., No. 22-2231, 2023 WL 4418219, at *3 (3d Cir. July 10, 2023)(citing Kilmore v. Erie Ins. Co., 595 A.2d 623, 626-627 (Pa. Super. 1991)).

The Complaint alleges, "Plaintiff requested and Defendant undertook the obligation to procure insurance coverage for Plaintiff's brokerage operation." [Doc. 1-1, ¶5] Thus, pursuant to Dilks Agency and Seneca Specialty Ins. Co., USI could **only** be held liable if it procured insurance that did not specifically cover Plaintiff's brokerage operation which it did not do. Nevertheless, the record demonstrates that this is precisely the type of coverage USI procured for Plaintiff, coverage for Plaintiff's brokerage operations. Critically, the Policy contains a coverage form titled "Transportation Broker Liability and Contingent Auto Coverage Form." (Ex. "A," pp. 22-29) It is beyond cavil that USI procured a policy that covers Plaintiff's brokerage operations.

The Complaint indicates that coverage was denied by Evanston because of the exclusions identified in Paragraphs 12 or 13. [Doc. 1-1, ¶9] Those provisions exclude coverage for:

**12. Motor Carrier Operations**

"Bodily injury" or "property damage" arising directly or indirectly out of an "accident" when the insured, a spouse or family member of the insured, an "employee" of the insured, or any entity in which the insured has partial or full ownership, is acting as the "motor carrier" or is listed on the bill of lading or contract of carriage.

**13. Other Operations**

Any operations by or on behalf of the insured other than operations as a "transportation broker".

(Ex. "A," p. 24) However, if PGT was listed on the bill of lading or was otherwise performing an operation other than as a transportation broker in a manner that would preclude coverage under the Policy which it sought, such exclusion was through no fault of USI. USI functioned merely as the insurance broker and is not alleged to have any role in whether PGT's was listed on the bill of lading or any of PGT's underlying business operations. Ultimately, the facts alleged show that PGT requested a policy to cover its brokerage operations and USI procured a policy which

unambiguously covered PGT's brokerage operations. Accordingly, USI did procure proper insurance coverage as requested by PGT.

PGT's complaint also alleges that coverage was denied because it was identified in the bill of lading as the carrier. [Doc. 1-1]; see also Ex. "B." The fact PGT was listed in the bill of lading is dispositive on this point as the Policy is unambiguous that the mere listing of PGT on the bill of lading would operate to exclude coverage. See e.g., Standard Venetian Blind Co. v. Am. Empire Ins. Co., 469 A.2d 563, 567 (Pa. 1983)(holding that an insured cannot avoid limitation of coverage where such limitation was unambiguous and conspicuously displayed).

Moreover, it is the law of the Commonwealth of Pennsylvania that an "insured is presumed to know what type of coverage he/it needs or wants," Allegrino v. Conway E & S, Inc., 2010 WL 3943939, at *8, and has the "obligation to question the insurer at the time the insurance contract is entered into as to the type of coverage desired and the ramifications arising therefrom," Berardi v. USAA Gen. Indem. Co., 2023 WL 4418219, at *3. With those principles in mind the impetus was on PGT to familiarize itself with the full extent of the coverage it sought and ultimately received. Allowing the bill of lading to reflect PGT as the carrier implicates two exclusions of which PGT ought to have been aware. PGT's failure to act in this regard necessarily contributed to its loss and therefore PGT is likewise barred from recovery pursuant to the doctrine of contributory negligence. See e.g., Berenato v. Seneca Specialty Ins. Co., 240 F. Supp. 3d at 364 (applying doctrine of contributory negligence to bar claim against broker for fire damage where insured disabled sprinkler system).

Accordingly, all of PGT's claims should be dismissed because PGT received the type of insurance coverage it requested and through no fault of USI, PGT was identified in a manner so as to preclude coverage pursuant to clear and unambiguous terms of the Policy.

**(B)      The Complaint fails to state a claim for a violation of the Unfair Trade Practices and Consumer Protection Law.**

The Complaint fails to state a claim under the Unfair Trade Practices and Consumer Protection Law ("UTPCPL") because the subject insurance policy was not purchased primarily for a personal, family or household purpose.  The statutory requirements for asserting a private cause of action under the UTPCPL are governed by 73 P.S. § 201-9.2, which provides:

> Any person who purchases or leases goods or services ***primarily for personal, family or household purposes*** and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action to recover actual damages or one hundred dollars ($100), whichever is greater.

73 P.S. § 201-9.2 (emphasis added).  Courts analyzing claims under the UTPCPL have held that it is inapplicable to insurance policies purchased for a commercial use.  See, e.g., Mantakounis v. Aetna Cas. & Sur. Co., No. CIV. A. 98-4392, 1999 WL 600535, at *6 (E.D. Pa. Aug. 10, 1999), aff'd, 254 F.3d 1078 (3d Cir. 2001) (stating "where the insurance is purchased for commercial purposes, the UTPCPL is inapplicable"); Britamco Underwriters, Inc. v. C.J.H., Inc., 845 F. Supp. 1090, 1096 (E.D. Pa. 1994), aff'd, 37 F.3d 1485 (3d Cir. 1994) (noting "[w]here insurance is purchased for business purposes, there will be no standing to assert a private cause of action under § 201–9.2(a) of the U.T.P.C.P.L."); Trackers Raceway, Inc. v. Comstock Agency, Inc., 583 A.2d 1193 (Pa. Super. 1990)(finding that where racetrack owner did not purchase policy primarily for personal, family, or household purposes, and there was no viable claim under the UTPCPL); see also Weiner v. Markel Intern. Ins. Co., 2006 WL 1142484, at *2 (Pa. Com. Pl., Philadelphia 2006) (plaintiffs had no claim under UTPCPL because insurance policies in question were not purchased for "personal, family or household purposes," but rather commercial establishments); Margaret Auto Body, Inc. v. Universal Underwriters Group, 2003 WL 1848560, at *2 (Pa. Com. Pl.,

Philadelphia 2003)(insurance policy acquired by corporate insured could not serve as basis of claim under the UTPCPL).

Here, there is little dispute that the Policy was not purchased "primarily for personal, family or household purposes" as PGT is a Pennsylvania corporation. [Doc. 1-1, ¶1] Moreover, PGT indicates that it sought coverage for it "brokerage operation." [Doc. 1-1, ¶5] Likewise, the "business description" on the policy declarations refers to Plaintiff as a "truck broker." (Ex. "A," p. 7) As the Complaint and the Policy evidence that Plaintiff purchased the Policy for a commercial purpose as opposed to a "primarily for personal, family or household purpose[,]" Plaintiff cannot maintain a cause of action under the UTPCPL and therefore Count III should be dismissed.

## VI.  CONCLUSION

For the foregoing reasons, USI respectfully requests that this Court dismiss Plaintiff's Complaint with prejudice, or in the alternative to a complete dismissal, dismiss Plaintiff's claim under the UTPCPL.

Respectfully submitted,

**WINGET, SPADAFORA &
SCHWARTZBERG LLP**

By:      /s/ Douglas Fogle
    Denis Dice, Esq.
    Douglas Fogle, Esq.
    1528 Walnut Street, Suite 1502
    Philadelphia, PA 19102
    Phone: (215) 433-1500
    Fax: (215) 433-1501
    Dice.d@wssllp.com
    Fogle.d@wssllp.com
    Attorneys for Defendant,
    USI Southwest, Inc.

Dated:  March 6, 2024